### DeCAMPS v. CARPIN.

1. The construction of a written contract is a question for the court and not for the jury.
2. A written contract by C. to be surety for the debts of J. to D., held from its terms not to include an existing liability of D. as surety for J., and which had not then been paid by D.; and parol testimony was inadmissible to prove that such was the understanding of the parties.
3. There being in this case, not merely a want of evidence to sustain a valid claim, but the absence of any legal demand whatever, the judgment below for plaintiff was reversed and the complaint dismissed. This case thus distinguished from the cases of *Carter* v. *Railroad Company*, and *Carrier & Harris* v. *Dorrance*, *ante pp.* 20 *and* 30.

Before ALDRICH, J., Greenville, April, 1882.

Action by M. G. DeCamps against A. Carpin.

The opinion states the case.

*Mr. Julius H. Heyward*, for appellant.

*Mr. W. L. Wait*, contra.

March 22d, 1883. The opinion of the court was delivered by

MR. JUSTICE McIVER. This was an action brought by the plaintiff to recover certain amounts alleged to be due to the plaintiff by one P. Jaffeux, the payment of which the plaintiff claimed had been assumed by the defendant.

It seems that the plaintiff, being the owner of a tract of land, had agreed to sell it to Jaffeux for $500, the same price which he paid for it, and had also befriended him by making advances and becoming security for stock and fertilizers. Jaffeux being unable to pay for the land, negotiations were opened by the defendant for the purchase of the land, by letter bearing date July 24th, 1878, in which he proposed certain terms which are stated in the letter as follows: "You will sell me your property, with immediate possession, in consideration of the sum of

$500, which I will pay at the following dates, viz.: $100 the 1st of January 1879, *  *  * and lastly, $100 the 1st of January 1881. *  *  * It will be impossible for me to do any better, and above all to give any money at once, besides in giving you $100 on the 1st of January next, and that which Mr. Jaffeux will give you, may be $100 also, you will then have the sum you wish to have. I say $100, but I do not know if Mr. J. owes you that sum, in interest or otherwise. At any rate I engage myself to compensate you at this period of that which he may owe you outside of the price of acquisition, such as interest, money still due on stock or any private account, &c., from the time he went on the farm until the day I enter in possession. *  *  * If these, my conditions, seem acceptable to you, you can settle to date with Mr. Jaffeux all he owes you, and make him acknowledge the sum payable on the 1st January next. I will be security if you desire it."

These terms were acceded to by plaintiff with a slight modification as to the rate of interest, and accordingly titles were made to defendant and he went into possession. The plaintiff then made a settlement with Jaffeux and found that they were about even, but plaintiff was liable as surety for Jaffeux on a note to one Davis, for $65, given for a mule, and, Jaffeux failing to pay, the plaintiff paid the note to Davis on June 28th, 1879. The plaintiff had also become surety for Jaffeux for some guano and for a physician's bill due by Jaffeux, amounting together to the sum of $10.90, which the plaintiff subsequently paid.

The plaintiff, in his complaint, amongst other things alleges that on July 24th, 1878, the defendant "wrote to this plaintiff a letter requesting the plaintiff to sell said land to defendant, upon certain terms therein set forth, and agreeing to be security for all that the said Jaffeux might be indebted to plaintiff in case he accepted the terms proposed. That plaintiff sent a message to the defendant the next day, agreeing to sell him the land upon the terms set forth in said letter, with a slight modification in the rate of interest. That these terms were accepted by the defendant, and this plaintiff made a title to said land to the defendant in accordance with the terms of said agreement." The complaint then goes on to allege an indebtedness on the

part of Jaffeux, which, however, was not proved at the trial; and also that he had been compelled to pay the note to Davis, as well as the other liabilities mentioned above, and demands judgment for the amount so due by Jaffeux, together with the amount so paid for him by plaintiff, as surety.

The defendant, in his answer, admits writing the letter referred to, a copy of which is set out in the "Case," "in which certain terms were offered the plaintiff for the purchase of the tract of land mentioned in the complaint, as also certain terms upon which the defendant would be willing to bind himself as surety for such debts of the said Jaffeux as were specified in the said letter, but the defendant denies that said terms have ever been accepted or complied with;" and he also denies all the other allegations contained in the complaint.

The only testimony offered at the trial was that of the plaintiff himself, and the letter of defendant above referred to. Amongst other things, the plaintiff testified "that it was the understanding between him and the defendant that the defendant was to re-imburse him for every liability, of every kind whatsoever, which he had incurred for Jaffeux, and that he would not have sold the land to the defendant, at the price agreed upon, on any other terms, as he could have sold the land to other parties at an advance of $150."

At the close of the testimony defendant moved for a non-suit, on the following grounds: "1. That it had not been shown that the terms offered in the letter of defendant had been complied with, and unless it were shown that the amount claimed by the plaintiff had been acknowledged by Jaffeux, and made payable on January 1st, 1879, as required by the terms of said letter, the defendant could not be held liable. 2. That by the very terms of the letter itself, the defendant could not be held liable for any debts of the said Jaffeux, paid by the plaintiff after July 24th, 1878." The motion for a non-suit was refused and the defendant offered no testimony.

The Circuit judge, amongst other things, charged the jury as follows: "Now, the question for you is, What was the contract? Did the defendant, Carpin, promise to pay the plaintiff, DeCamps, the $500, and, in addition, what Jaffeux owed him

for money advanced, and also for what he was liable to pay on his account?" The jury rendered a verdict for plaintiff, and defendant appeals upon various grounds, which, in substance, allege error in refusing the motion for non-suit, and in leaving it to the jury to say what was the contract between the parties.

There can be no doubt that the plaintiff brought his action upon the contract as stated in the defendant's letter, only modified as to the rate of interest, about which there seems to be no dispute, for that is the only contract mentioned in the complaint and there is no allegation that it was in any way modified except as to the rate of interest. On the contrary, it is expressly alleged that the contract was "upon the terms set forth in said letter, with a slight modification as to the rate of interest." By that contract, therefore, must the plaintiff stand or fall.

The rule is well settled that the construction of the terms of a written contract is a question for the court and not for the jury, (*Mowry* v. *Stogner*, 3 *S. C.* 251; *Hammond* v. *Port Royal and Augusta R. R. Co.*, 15 *S. C.* 10; *Russell* v. *Arthur*, 17 *Id.* 477,) and therefore we think that the Circuit judge erred in referring it to the jury to say what was the contract between the parties. The contract sued upon was the one stated in the letter, and it was for the court, and not for the jury, to say what was the proper construction of the terms in which it was stated in the letter. The real point in dispute between the parties was, whether, under the terms of the contract sued upon, the defendant agreed to pay simply what was due by Jaffeux to the plaintiff at the time, or whether he did not also agree to pay whatever debts the plaintiff might then be liable for as the surety of Jaffeux, and which might afterwards be paid by the plaintiff. The plaintiff contends for the latter, while the defendant insists that the former is the true construction of the terms of the contract.

We think that the construction contended for by the defendant is the correct one. The terms proposed in the letter of the defendant, which were acceded to by the plaintiff and which have hereinbefore been stated, conclusively show that the agreement was that defendant was to pay whatever Jaffeux might then owe the plaintiff, and not what he might subsequently become

indebted for by reason of a surety debt subsequently paid or otherwise. This is evident from the fact that the proposition was to pay on January 1st, 1879, what Jaffeux then owed to plaintiff, and confirmed by the further fact that defendant went on to say if his terms were accepted the plaintiff could settle with Jaffeux "to date," July 24th, 1878, "all he owes you," and make him acknowledge the same payable January 1st, 1879. This certainly could not have been done if the intention was to include not only what Jaffeux then owed plaintiff, but also what he might subsequently owe him on account of a surety debt subsequently paid by plaintiff for him.

Until the plaintiff paid the debt upon which he was surety for Jaffeux, the latter could not be said to owe the plaintiff anything on account of such debt, for it might turn out that Jaffeux would himself pay the debt and thus relieve his surety, or it might be that the surety never would pay the debt; and, hence, as it is well settled, it cannot be said that Jaffeux owed anything to the plaintiff at the time, on account of the debts for which the plaintiff was surety for Jaffeux. The indebtedness of Jaffeux to the plaintiff on account of these debts did not arise until nearly a year after the contract in question was made, to wit, on June 28th, 1879, when the plaintiff paid these debts, and we do not see how such indebtedness could have been brought into a settlement, to be made with Jaffeux in July, 1878, in which he was to acknowledge the sum due, which was to be payable January 1st, 1879. It seems, too, that such must have been the intention of the parties at the time, for it appears from plaintiff's own testimony that when the contract with defendant was closed, that he had a settlement with Jaffeux, as proposed by defendant in his letter, in which it was ascertained that Jaffeux then owed him nothing.

It is true that the plaintiff, in his testimony, did say "that it was the understanding, between him and the defendant, that the defendant was to re-imburse him for every liability of every kind whatsoever which he had incurred for Jaffeux," but this amounts to nothing more than an attempt on the part of the plaintiff to give construction to the terms of the contract in question, and nothing is better settled than that, when parties

contract in writing, they must abide by the terms as written, and cannot interpolate into the contract the "understanding" which the parties had of the meaning of those terms. We must look alone to the writing to ascertain what were the words used by the parties, and then it is for the court, and certainly not for one of the parties, to give a proper construction to the words used.

Inasmuch, therefore, as the plaintiff not only failed to prove that Jaffeux owed him anything at the time the contract with defendant was made, but, on the contrary, did prove that he then owed him nothing, the motion for a non-suit should have been granted. And as it is not a case of a want of evidence merely, but one in which the nature of the demand, as set up by plaintiff, is such that he cannot in any event recover, under the authority of the case of *Sampson & Wyatt* v. *Singer Manufacturing Company*, 5 *S. C.* 465, the complaint must be dismissed.

This case differs from the case of *Carter* v. *Columbia and Greenville R. R. Co.*, and *Carrier & Harris* v. *Dorrance, ante pp.* 20 *and* 30, decided at the present term, in this respect: In those cases the motions for non-suit were based solely upon the want of evidence tending to establish material allegations in the complaints, while here the nature of the demand, as set up by plaintiff, is such that he could not in any event recover. The real cause of action is the indebtedness of Jaffeux to plaintiff, arising from the payment by plaintiff of certain debts for which he was liable as surety for Jaffeux, and, as we have seen, the defendant could not be made liable, under a proper construction of the agreement upon which the complaint is based, for such indebtedness, no matter how well established.

The judgment of this court is that the judgment of the Circuit Court be reversed, and that the complaint be dismissed.